2000 UT 74

**STATE of Utah, Plaintiff and Appellee,**

v.

**Sean Hale HOLGATE, Defendant and Appellant.**

**No. 990313.**

Supreme Court of Utah.

Sept. 19, 2000.

Jan Graham, Att'y Gen., Scott Keith Wilson, Jeffrey S. Gray, Asst. Att'ys Gen., Salt Lake City, for plaintiff.

John D. O'Connell, Jr., Kent R. Hart, Heidi Buchi, Salt Lake City, for defendant.

RUSSON, Associate Chief Justice:

¶ 1 Defendant Sean Holgate was tried before a jury and convicted of murder and aggravated burglary. Holgate argues on appeal that there was insufficient evidence to sustain a conviction on either count. Holgate failed to raise the sufficiency of the evidence issue below, but argues that he should be entitled to raise such a claim initially on appeal.

## BACKGROUND

¶ 2 "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Brown,* 948 P.2d 337, 339 (Utah 1997). We present conflicting evidence only as necessary to understand issues raised on appeal. *See State v. Dunn,* 850 P.2d 1201, 1206 (Utah 1993).

¶ 3 On the evening of June 17, 1997, Jake Gallegos, the victim, along with two friends, went to Holgate's apartment in West Valley City to purchase drugs. Holgate's friend Micah Phillips joined the group at Holgate's apartment. At some point, Gallegos and his two friends left the apartment and returned to deliver forty dollars to Holgate. Gallegos gave the money to Holgate but then angrily left, exclaiming that Holgate had cheated him. Holgate later testified that Gallegos was "pretty furious" when he left.

¶ 4 Later that evening, Gallegos telephoned Holgate several times and threatened Holgate and his mother. Gallegos also returned to Holgate's apartment to make additional threats. Among other threats, Gallegos threatened to take Holgate and his family hostage. Holgate's mother, who resided with Holgate, called the police to report the harassment. Officer Rafael Fausto reported to the scene and discussed the matter with Holgate and his mother. Attempting to resolve the dispute, Officer Fausto

contacted Gallegos and escorted him to Holgate's apartment. After discussing the matter, Gallegos apologized and shook hands with Holgate. Officer Fausto instructed Gallegos to make no further contact with Holgate and his family, and instructed Holgate to contact the police if any further problems arose.

¶ 5 On June 19, 1997, Holgate called Gallegos to tell him that he would be coming over to his apartment. Phillips joined Holgate, and they proceeded together to Gallegos's apartment, which was located in the same apartment complex. Holgate later testified that Phillips did not "really know" Gallegos and had not been threatened by him. However, Holgate had informed Phillips that Gallegos was dangerous. Phillips hid himself just outside the apartment door so that he was out of the line of sight of whoever answered the door. Holgate knocked on the door. Gallegos's friend, Tuty Tho, opened the door and was greeted by Holgate, who asked to see Gallegos. Tho called for Gallegos, who was in the kitchen, and Gallegos told Tho to invite Holgate in. Holgate called out to Gallegos, responding, "No. Why don't you come out here? I need to talk to you real fast." Gallegos then proceeded from the kitchen toward the apartment entrance and as he did so, again invited Holgate in. Holgate once again refused and then stepped backwards, grinning, while Phillips stepped inside the entrance of the apartment. Standing inside the entrance with both hands hidden behind his back, Phillips asked, "Hey, what's up, bro?" to which Gallegos replied, "What's up?" After this brief exchange, Phillips asked Gallegos in a threatening voice, "What are you going to do now?" and pulled from behind his back a semi-automatic handgun. Throughout this exchange, Holgate stood directly behind Phillips and was grinning.[1]

¶ 6 As Gallegos turned to flee into the kitchen, Phillips fired the gun, fatally wounding Gallegos. Phillips then waved the gun back and forth in a sweeping motion, and after his gun apparently jammed, fled from Gallegos's apartment with Holgate. Holgate and Phillips ran together in a direct path across the apartment complex and parking lot to Phillips's vehicle, which was parked nearby. A friend of Phillips and Holgate, Tony Miller, waited in the driver's seat of the vehicle. When Holgate and Phillips arrived, Holgate said, "Get in, G."[2] Phillips and Holgate then climbed into the car and were driven away from the apartment complex by Miller. They departed so quickly that the vehicle's tires squealed as they sped away.

¶ 7 The police apprehended them shortly thereafter. When asked by the police why he thought they had been stopped, Holgate replied, "Because somebody talking shit got dealt with." A search of the car revealed the murder weapon wrapped in a stocking cap under the front passenger seat. Tests performed thereafter revealed the presence of gunpowder residue on Holgate's clothing. While being transported to the police station, Holgate asked an officer, "Does this have anything to do with what happened in West Valley?" Holgate testified at trial that he did not find out that Gallegos had been shot until two to three hours after the shooting when he was interrogated at the police station.

¶ 8 For his alleged participation in the killing of Gallegos, Holgate was charged with murder, a first degree felony, in violation of Utah Code Ann. § 76–5–203, and aggravated burglary, a first degree felony, in violation of Utah Code Ann. § 76–6–203.[3] At his jury trial, Holgate alleged that he went to Gallegos's apartment on June 19 because Phillips

1. Tho testified at trial that Holgate was "grinning" during the exchange at Gallegos's door. Holgate admitted that he might have grinned as he leaned against the railing outside the door.

2. The State presented the testimony of a child who observed the suspects' flight from the scene and heard the exchange between Holgate and Phillips as they entered the vehicle. The State alleged that "G" is a street term for "gangster."

Holgate claimed that Phillips, not Holgate, said, "Get in, G."

3. Holgate and Phillips were each charged with murder and aggravated burglary for their participation in the killing of Gallegos. It appears from the record that Phillips was convicted of a lesser charge pursuant to a plea agreement. However, this information was not before the jury during Holgate's trial.

claimed he wanted to return the forty dollars that Gallegos said they had stolen. Holgate conceded that they did not return the forty dollars to Gallegos, and a search of the car and the three suspects revealed only sixty-two cents in their possession.

¶ 9 The jury found Holgate guilty on both counts, and the trial court sentenced Holgate to concurrent prison terms of five years to life for the two convictions and consecutive one-year terms on each count for a weapons-related enhancement.

¶ 10 On appeal, Holgate argues that there was insufficient evidence to convict him of either murder or aggravated burglary. Holgate concedes that he failed to raise the sufficiency issue before the trial court, but contends that he should be entitled to raise it for the first time on appeal because (1) a conviction based on insufficient evidence constitutes "plain error" or "exceptional circumstances," (2) such a conviction would violate Holgate's "fundamental constitutional rights," and (3) a rule permitting defendants to raise an insufficient evidence claim for the first time on appeal would not implicate the policies on which the preservation doctrine is premised.

## ANALYSIS

### I. PRESERVATION OF AN INSUFFICIENT EVIDENCE CLAIM

¶ 11 As a general rule, claims not raised before the trial court may not be raised on appeal. *See State v. Marvin*, 964 P.2d 313, 318 (Utah 1998). The preservation rule serves two important policies. First, "in the interest of orderly procedure, the trial court ought to be given an opportunity to address a claimed error and, if appropriate, correct it." *State v. Eldredge*, 773 P.2d 29, 36 (Utah 1989). Second, a defendant should not be permitted to forego making an objection with the strategy of "enhanc[ing] the defendant's chances of acquittal and then, if that strategy fails, ... claim[ing] on appeal that the Court should reverse." *State v. Bullock*, 791 P.2d 155, 159 (Utah 1989). To serve these policies, we have held that the preservation rule applies to every claim, including constitutional questions, unless a de-

fendant can demonstrate that "exceptional circumstances" exist or "plain error" occurred. *See Monson v. Carver*, 928 P.2d 1017, 1022 (Utah 1996); *State v. Lopez*, 886 P.2d 1105, 1113 (Utah 1994).

¶ 12 We have stated that "the exceptional circumstances exception is ill-defined and applies primarily to rare procedural anomalies." *State v. Dunn*, 850 P.2d 1201, 1209 n. 3 (Utah 1993). Holgate fails to point out any procedural anomalies or other exceptional circumstances that might justify his failure to preserve the sufficiency of the evidence in the instant case. We thus turn to his claim of plain error.

¶ 13 The plain error exception enables the appellate court to "balance the need for procedural regularity with the demands of fairness." *State v. Verde*, 770 P.2d 116, 122 n. 12 (Utah 1989). "At bottom, the plain error rule's purpose is to permit us to avoid injustice." *Eldredge*, 773 P.2d at 35 n. 8. To demonstrate plain error, a defendant must establish that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *Dunn*, 850 P.2d at 1208–09.

¶ 14 As a general rule, to ensure that the trial court addresses the sufficiency of the evidence, a defendant must request that the court do so. The Utah Rules of Criminal Procedure state that when a defendant moves the court to arrest judgment on the basis of insufficient evidence, the directive is mandatory in that the court "shall[ ] arrest judgment if the facts proved or admitted do not constitute a public offense." Utah R.Crim. P. 23. In contrast, when a defendant fails to make such a motion, the directive is permissive, providing that the trial court *may* arrest judgment. *See id.; see also* Utah R.Crim. P. 17(*o*) ("[T]he court *may* issue an order dismissing any information or indictment ... upon the ground that the evidence is not legally sufficient to establish the offense charged ...." (emphasis added)); Utah R.Crim. P. 24(a) ("The court *may*, upon

motion of a party or upon its own initiative, grant a new trial in the interest of justice if there is any error or impropriety which had a substantial adverse effect upon the rights of a party." (emphasis added)).[4]

¶ 15 However, even when a defendant fails to move the court for relief based on the sufficiency of the evidence, the trial court's discretion is not unlimited. The Code of Criminal Procedure provides, "When it appears to the court that there is not sufficient evidence to put a defendant to his defense, it shall forthwith order him discharged." Utah Code Ann. § 77–17–3 (1999). Thus, under this provision, the trial court "shall" grant relief when the evidence is insufficient, even if a defendant fails to properly raise the issue, but only when the evidentiary defect is "apparent" to the trial court. *Id.*

¶ 16 Reading section 77–17–3 in conjunction with the rules of criminal procedure that govern the trial court's responsibility to grant relief based on the sufficiency of the evidence, it is clear that as a general rule, a defendant must raise the sufficiency of the evidence by proper motion or objection to preserve the issue for appeal. This rule serves the two policies on which the preservation rule is based. First, as the trial court has no duty under statute or rule to examine the sufficiency of the evidence unless the defendant moves the court to do so or there is an "apparent" insufficiency, the preservation rule ensures that the issue will be brought to the trial court's attention and the trial court will have the opportunity to address the issue. *See Eldredge*, 773 P.2d at 36. Second, a general rule that preservation is necessary in this context would prevent a

defendant from deliberately foregoing relief below based on the sufficiency of the evidence, hoping that a remediable evidentiary defect might not be perceived and corrected, thus strategically facilitating the defendant's chance for a reversal on appeal. *See State v. Bullock*, 791 P.2d 155, 159 (Utah 1989).

¶ 17 Having thus concluded that preservation is necessary as a general rule, we must determine under what circumstances it would be plain error for the trial court not to discharge a defendant on the basis of insufficient evidence. Section 77–17–3 states that when the evidentiary defect is "apparent" to the trial court, the court "shall" discharge the defendant. It necessarily follows that the trial court plainly errs if it submits the case to the jury and thus fails to discharge a defendant when the insufficiency of the evidence is apparent to the court. While it is difficult for the court on appeal to dictate when an evidentiary defect was apparent to the trial court, there is a certain point at which an evidentiary insufficiency is so obvious and fundamental that it would be plain error for the trial court not to discharge the defendant. An example is the case in which the State presents *no* evidence to support an essential element of a criminal charge. The plain error exception would serve to avoid a manifest injustice in such a case. Thus, to establish plain error, a defendant must demonstrate first that the evidence was insufficient to support a conviction of the crime charged and second that the insufficiency was so obvious and fundamental

---

4. Holgate impliedly contends that these rules require the trial court to grant relief sua sponte. However, Holgate relies primarily upon federal precedent that is inapposite. Rule 29(a) of the Federal Rules of Criminal Procedure states that "[t]he court on motion of a defendant or of its own motion *shall* order the entry of judgment of acquittal ... if the evidence is insufficient to sustain a conviction." (Emphasis added.) *See also* 2 Charles A. Wright, *Federal Practice and Procedure: Criminal 2d* § 469, at 673 (1982). In contrast, the Utah rules, as discussed above, provide that the trial court "may" grant relief when the evidence is insufficient. Regardless, most federal courts have limited the application of rule 29(a) so as to bar the defendant from raising the

sufficiency of the evidence for the first time on appeal absent plain error. *See id.*

In addition, Holgate urges us to look to rule 52(b) of the Utah Rules of Civil Procedure, which permits a party to a civil bench trial to raise the sufficiency of the evidence initially on appeal, and the case of *State v. Larsen*, 2000 UT App 106, ¶ 9 n. 4, 999 P.2d 1252, in which the court of appeals applied rule 52(b) in the context of a criminal bench trial. However, we decline to comment on rule 52(b) or the court of appeals' application of the rule in *Larsen* because neither rule 52(b) nor *Larsen* is relevant to the instant case, in which Holgate was convicted after a jury trial.

that the trial court erred in submitting the case to the jury.[5]

## II.  PLAIN ERROR

¶ 18  To determine whether there was sufficient evidence to convict a defendant, we do not examine whether we believe that the evidence at trial established guilt beyond a reasonable doubt.  Rather, we will conclude that the evidence was insufficient when, after viewing the evidence and all inferences drawn therefrom in a light most favorable to the jury's verdict, the evidence "is sufficiently inconclusive or inherently improbable such that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime for which he or she was convicted." *State v. Dunn*, 850 P.2d 1201, 1212 (Utah 1993).  If we conclude that the evidence was insufficient to convict Holgate, we must then, as discussed above, determine whether the evidentiary defect was so obvious and fundamental that it was plain error to submit the case to the jury.

### A.  Murder

¶ 19  We first consider whether there was sufficient evidence to allow the murder charge to be submitted to the jury.  Murder is (1) intentionally or knowingly causing the death of another, (2) a killing that results from an intent to cause serious bodily injury, or (3) a killing that results from conduct evincing a depraved indifference to human life. *See* Utah Code Ann. § 76–5–203 (1999).  Under Utah's accomplice liability statute, anyone "acting with the mental state required for the commission of an offense ... who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct." *Id.* § 76–2–202.

¶ 20  The State does not dispute that Phillips, rather than Holgate, fatally shot Gallegos.  Therefore, in order to convict Holgate of murder under the accomplice liability statute, the State had the burden of proving beyond a reasonable doubt that Holgate (1)

intentionally or knowingly participated in the killing, (2) intended that Phillips cause serious bodily injury to Gallegos, or (3) acted under circumstances evincing a depraved indifference to human life.

¶ 21  "It is well established that intent can be proven by circumstantial evidence." *State v. James*, 819 P.2d 781, 789 (Utah 1991).  When intent is proven by circumstantial evidence, we must determine (1) whether the State presented " 'any evidence' " that Holgate possessed the requisite intent, and (2) whether " 'the inferences that can be drawn from that evidence have a basis in logic and reasonable human experience' " sufficient to prove that Holgate possessed the requisite intent. *State v. Brown*, 948 P.2d 337, 344 (Utah 1997) (quoting *State v. Workman*, 852 P.2d 981, 985 (Utah 1993)).

¶ 22  To be submitted to the jury, there had to be sufficient evidence, including the logical and reasonable inferences that could be drawn therefrom, that Holgate was a knowing participant in the killing of Gallegos.  The following evidence was before the court:

(1) Two days before the shooting, Gallegos called Holgate several times, threatening him for allegedly stealing his money in a drug transaction.  In one threat, Gallegos informed Holgate that he intended to hold Holgate and his family hostage.  Prior to the shooting, Holgate informed Phillips that Gallegos was dangerous and remained a threat.  Phillips, however, did not "really know" Gallegos and had not been threatened by him.

(2) On the day of the shooting, Holgate telephoned Gallegos and informed him that he would be coming over to his apartment.  Holgate and Phillips went over to Gallegos's apartment together.  However, Phillips stepped aside from the doorway, out of view, so that only Holgate appeared outside when Tho opened the apartment door.  When Gallegos called out to Tho to invite Holgate into the apartment, Holgate refused and replied, "No.  Why don't you come out here?  I need to talk to you real fast."  As Gallegos approached the door

---

5.  Having concluded that the two recognized exceptions to the preservation rule—exceptional circumstances and plain error—govern a defen-

dant's responsibility to preserve an insufficient evidence claim, we do not address Holgate's constitutional and policy-based arguments.

and invited Holgate in, Holgate again refused to enter the apartment and instead stepped back with a grin on his face, allowing Phillips to enter the doorway and shoot Gallegos.

(3) When asked at trial if he knew that Phillips brought a gun to Gallegos's apartment, Holgate initially responded in the affirmative, "I knew he had a gun, yes." When asked a second time, however, Holgate stated that he knew Phillips owned a gun, but did not see the gun on the day of the shooting. Moreover, when Holgate stepped back from Gallegos's doorway prior to the shooting, Phillips stepped directly in front of Holgate with his hands behind his back—not in his pockets, under his shirt, or otherwise concealed from Holgate. When Phillips then raised his hands from behind his back, he was holding the weapon. Holgate testified, however, that he did not see the gun even after Phillips stepped in front of him.

(4) After the shooting, Phillips and Holgate ran down the stairs together, along a sidewalk, and across a parking lot in a relatively direct path to Phillips's car. When they arrived at the car, Holgate said to Phillips, "Get in, G." After the two young men climbed into the car, their friend Miller, who had been waiting in the driver's seat, immediately drove the vehicle away from the scene.

(5) When the car was stopped shortly after the shooting, a police officer asked Holgate why he thought they were being stopped, and Holgate responded, "Because somebody talking shit got dealt with." He later added, "Does this have anything to do with what happened in West Valley?" However, Holgate testified at trial that he did not find out that Gallegos had been shot until two to three hours after the shooting when he was interrogated at the police station.

¶ 23 Reviewing all of the evidence, a jury could reasonably infer the following:

(1) Holgate had a motive to kill Gallegos and planned, along with Phillips, to do so. While Holgate claimed that he lacked any motive to kill Gallegos and that Phillips instead acted out of an inexplicable motive, the evidence in this regard suggests otherwise. Gallegos had threatened Holgate and his family—even threatening to hold them hostage—only two days before the shooting occurred. Moreover, even though Holgate claimed that he had worked out his differences with Gallegos, Holgate informed Phillips, who did not "really know" Gallegos and had not been threatened by him, that Gallegos was still a threat. Thus, a jury could reasonably infer that Holgate had a real motive to kill Gallegos out of revenge or even fear, that Holgate was the instigator of the crime, and that Phillips lacked any motive independent of his intention to protect or "stick up for" Holgate.

(2) Holgate concealed Phillips's presence in order to lure Gallegos to the door. This inference is supported by Holgate's appearing alone at Gallegos's apartment door, failing to announce Phillips's presence, refusing to enter the apartment when asked, and stepping away with a grin on his face as Gallegos came near. A jury could reasonably infer that by luring Gallegos to the door, Holgate provided to Phillips a clear and direct shot at Gallegos.

(3) Holgate knew that Phillips brought a gun to Gallegos's apartment. First, a jury could reasonably infer that even if Holgate had not seen the gun before the shooting, he knew Phillips had the gun when they went to Gallegos's apartment, as he first testified. Second, a jury could reasonably infer that when Phillips stepped in front of Holgate with his hands behind his back, Holgate could have seen the gun.

(4) Holgate and Phillips had planned in advance to commit the murder. A jury could reasonably make this inference from the circumstances of Holgate's flight. Holgate and Phillips ran from Gallegos's apartment in a direct path to Phillips's car, in which a friend had been waiting to serve as their getaway driver. Moreover, Holgate's statement to Phillips to "Get in, G," further strengthens an inference that they had planned their escape from the crime scene. While a defendant's flight from a crime scene, standing alone, "does not support an inference of intentional conduct,"

*James,* 819 P.2d at 790, the circumstances of a defendant's flight, in addition to other circumstantial evidence, may be adequate to support such an inference.[6] Here, a jury could reasonably have inferred Holgate's intent from the circumstances of defendant's flight in addition to "other evidence of the defendant's intent . . . present in the record." *Id.*

(5) Holgate intended to kill Gallegos in retaliation for the threats Gallegos had made to Holgate and his family. A jury could reasonably make this inference on the basis of Holgate's statement to the police prior to his arrest that "somebody talking shit got dealt with." Moreover, a jury could interpret Holgate's statement of having "dealt with" Gallegos as inconsistent with his explanation at trial of not intending to have shot Gallegos and having no idea until two to three hours after the shooting whether Gallegos had actually been shot.

¶ 24 From these reasonable inferences and the evidence before the trial court, a jury could reasonably have concluded that Holgate intentionally or knowingly participated in the killing of Gallegos or intended that Phillips cause serious bodily injury to Gallegos. Thus, there was sufficient evidence to convict defendant of murder, and as a result, the trial court did not commit plain error in submitting the matter to the jury for determination.

### B. *Aggravated Burglary*

■ ¶ 25 We next consider the sufficiency of the evidence supporting Holgate's aggravated burglary conviction. To convict Holgate of aggravated burglary, the State had to prove every statutory element of the crime. Utah Code Ann. § 76–6–202(1) (1999) defines the crime of burglary as follows: "A person is guilty of burglary if he enters or remains unlawfully in a building or any portion of a building with intent to commit a felony or theft or commit an assault on any person." A burglary is aggravated under Utah Code Ann. § 76–6–203 if the actor or another participant causes bodily injury to another in the course of the burglary. It is undisputed that Phillips, not Holgate, entered Gallegos's apartment and fatally shot Gallegos. It was therefore necessary for the State to satisfy the requirements of the accomplice liability statute, Utah Code Ann. § 76–2–202, in order to convict Holgate of aggravated burglary. The State had to show that Holgate, acting "with the mental state required for the commission of" aggravated burglary, "solicit[ed], request[ed], command[ed], encourage[d], or intentionally aid[ed]" Phillips in the commission of aggravated burglary. *Id.* In other words, the State had to prove beyond a reasonable doubt that Holgate intentionally aided Phillips in entering Gallegos's apartment and intended that Phillips commit a felony or an assault inside the apartment.

¶ 26 Holgate argues that there was insufficient evidence to sustain the aggravated burglary conviction because there was no proof of Holgate's intent that Phillips enter or remain in Gallegos's apartment. However, intent may be proven by circumstantial evidence and reasonable inferences drawn therefrom, and intent is rarely established by direct evidence. *See Brown,* 948 P.2d at 344. We therefore must look to the circumstantial evidence and all reasonable inferences drawn therefrom to determine whether " 'the evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust.' " *State v. Heaps,* 2000 UT 5, ¶ 19, 999 P.2d 565 (quoting *Child v. Gonda,* 972 P.2d 425, 433 (Utah 1998)).

¶ 27 The primary evidence on this issue is as follows: Holgate stood outside the doorway of Gallegos's apartment concealing Phil-

---

**6.** *See State v. Little,* 194 Conn. 665, 485 A.2d 913, 918 (1984); *State v. Jamison,* 7 P.3d 1204, 1212 2000 Kan. LEXIS 607, \*10; *State v. Tucker,* 242 Neb. 336, 494 N.W.2d 572, 578 (1993); *State v. Meloon,* 124 N.H. 257, 469 A.2d 1316, 1318 (1983); *Commonwealth v. Lewis,* 276 Pa.Super. 451, 419 A.2d 544, 546–47 (1980); *see also* 1 *Wharton's Criminal Evidence* § 214, at 450 (Charles E. Torcia ed., 13th ed. 1972) ("Flight by itself is not sufficient to establish the guilt of the defendant, but is merely a circumstance to be considered with other factors as tending to show a consciousness of guilt and therefore guilt itself. That there is evidence which tends to weaken the inference of guilt implicit in flight does not render the evidence of flight inadmissible, but is merely to be considered by the jury in weighing the effect of such flight." (footnotes omitted)).

lips's presence when Tho answered the door. Holgate refused to enter Gallegos's apartment when asked to do so and insisted, "No. Why don't you come out here? I need to talk to you real fast." Then, when Gallegos arrived at the door, Holgate stepped back from the doorway with a grin on his face as Phillips entered the doorway.

¶ 28 A jury could reasonably infer from this evidence that Holgate lured Gallegos to the door and stepped back from the entrance to enable Phillips to enter the doorway and shoot Gallegos. Moreover, it would not be unreasonable to infer from this evidence that Holgate intended to aid Phillips's entry into the apartment for the purpose of shooting Gallegos. In sum, in light of the evidence supporting the aggravated burglary charge and the reasonable inferences that could be drawn therefrom, a jury could reasonably conclude that Holgate intentionally aided Phillips in entering Gallegos's apartment and intended that Phillips commit a felony or assault inside the apartment. Thus, there was sufficient evidence to convict Holgate of aggravated burglary, and as a result, it was not error for the trial court to submit the aggravated burglary charge to the jury for determination.

## CONCLUSION

¶ 29 While the sufficiency of the evidence may be reviewed for plain error, Holgate has not demonstrated that the trial court plainly erred in submitting his case to the jury because he has failed to establish, as a threshold matter, that there was insufficient evidence to support either the murder charge or the aggravated burglary charge. We therefore affirm both of Holgate's convictions.

¶ 30 Chief Justice HOWE, Justice DURHAM, Justice DURRANT, and Justice WILKINS concur in Associate Chief Justice RUSSON's opinion.