**2026 UT App 45**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ABDULFAFAH ALI ADEN,
Appellant.

Opinion
No. 20240188-CA
Filed April 2, 2026

Third District Court, Salt Lake Department
The Honorable Heather Brereton
No. 231901554

Dain Smoland and Staci Visser,
Attorneys for Appellant

Derek E. Brown and Daniel W. Boyer,
Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES RYAN D. TENNEY and JOHN D. LUTHY concurred.

MORTENSEN, Judge:

¶1      Abdulfafah Ali Aden was pulled over on suspicion of DUI in April 2020. After a series of delays—some attributable to him, others not—he was tried and convicted in November 2023. Aden appeals, arguing that he was deprived of his Sixth Amendment right to a speedy trial. We disagree and affirm his convictions.

BACKGROUND[1]

¶2 Aden was driving in Salt Lake City when he was pulled over and arrested on suspicion of DUI on April 28, 2020. Nearly four months later, on August 19, he was charged with felony DUI, operating a vehicle as an alcohol-restricted driver, possession or use of a controlled substance, and improper use of the center lane. He made his initial appearance on December 21, where the court set a scheduling conference for January 11, 2021. When Aden failed to appear for the scheduling conference, the court issued a bench warrant for his arrest. Aden appeared on March 1, and the court recalled the warrant. He then moved for, and was granted, three successive continuances to March 29, April 19, and May 3, respectively. At the May 3 hearing, the court scheduled the matter for a preliminary hearing on July 7. Aden was bound over for trial as charged at that hearing, and he was arraigned on August 9. The court set the matter for trial for January 2022, but Aden failed to appear at the pretrial conference on January 3, 2022. Consequently, the court struck the trial and then, on January 10, issued another bench warrant.

¶3 Aden appeared at a pretrial conference on August 3, 2022, and the court ordered that he be taken into custody on the outstanding warrant. Then, on August 15, at Aden's request, the court set a trial for September. At a pretrial conference on September 19, however, the parties stipulated to continue the trial to early January 2023, and the court ordered that Aden be released from custody pending trial. When the State moved for a continuance at the pretrial hearing on December 22 based on witness unavailability, Aden objected and moved to dismiss the

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly. We present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (cleaned up).

case. While the court denied the motion and continued the trial to later in January, it warned that it would dismiss the case if the State were not ready to proceed on the newly scheduled date. At the pretrial conference on January 23, 2023, the State represented again that it was unready to proceed, so the court followed through and dismissed the charges, albeit without prejudice.

¶4 The State refiled the charges against Aden on February 5, 2023. Aden made his second initial appearance on February 22, and he was subsequently bound over as charged on April 12. The court set trial for June, and when the State asked for another continuance at the pretrial conference on June 1, Aden moved again to dismiss the case. The court denied Aden's motion, granted the continuance, and reset trial for August. The court subsequently had to reschedule trial on two more occasions—once for October and once for November—because other cases had priority under rule 17(b) of the Utah Rules of Criminal Procedure.

¶5 The case was ultimately tried on November 29 and 30, 2023. Aden was convicted on the felony DUI and alcohol-restricted driver counts, and the other two counts were dismissed.

ISSUE AND STANDARD OF REVIEW

¶6 On appeal, Aden argues that he was deprived of his right to a speedy trial under the Sixth Amendment to the United States Constitution. Whether the government has violated a defendant's right to a speedy trial is a question of law that we decide as a matter of law. *State v. Hintze*, 2025 UT 3, ¶ 38, 567 P.3d 506.[2]

---

2. The State maintains that this issue is unpreserved. Aden disagrees but argues in the alternative that, if unpreserved, he was deprived of the effective assistance of counsel based on his

(continued…)

ANALYSIS

¶7 "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI. In *Barker v. Wingo*, the Supreme Court articulated a four-factor "balancing test" for courts to apply in deciding whether a defendant's right to a speedy trial has been violated. 407 U.S. 514, 530 (1972). Under the test, courts consider (1) the "length of delay," (2) "the reason for the delay," (3) "the defendant's assertion of his right," and (4) "prejudice to the defendant." *Id.* Applying that test here, we conclude that Aden was not deprived of his speedy trial right.

A.      Length of Delay

¶8 The first factor in a *Barker* analysis entails two steps. *State v. Hintze*, 2025 UT 3, ¶ 44, 567 P.3d 506. The defendant must demonstrate "that the length of time between formal accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay." *Id.* (cleaned up). If he or she has not done so, "the inquiry ends there." *Id.* (cleaned up). If, however, the defendant makes this threshold showing—a delay approaching a year will usually suffice—the court must then "examine the extent to which the delay stretche[d] beyond the bare minimum needed to trigger judicial examination of the claim." *Id.* ¶¶ 44, 45 (cleaned up). "The significance of this factor in the overall speedy trial analysis depends on the circumstances of the case." *Id.* ¶ 46. "To take but one example, the delay that can

---

attorney's failure to specifically argue that the case should have been dismissed on speedy trial grounds. Where, as here, "the merits of a claim can easily be resolved in favor of the party asserting that the claim was not preserved, we readily may opt to do so without addressing preservation." *State v. Kitches*, 2021 UT App 24, ¶ 28, 484 P.3d 415 (emphasis omitted).

be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531.

¶9      Here, Aden waited for trial for 1,184 days—a little over three years—while charges were formally pending against him, which is plainly sufficient to trigger a full *Barker* analysis.[3] *See Hintze*, 2025 UT 3, ¶ 44.

¶10      The second step is likewise met here because the delay went two years beyond the time necessary to trigger a full analysis and because the case involved relatively simple charges that, in normal circumstances, are usually "resolved in well under [three] years." *Id.* ¶ 48. Indeed, routine DUI charges—which the probable cause statement makes clear this case involved—are more akin to ordinary street crimes than serious, complex conspiracy charges. *See, e.g.*, *Zamorano v. State*, 84 S.W.3d 643, 649 (Tex. Crim. App. 2002) (describing charge in speedy trial context as "plain-vanilla DWI"); *State v. Marquez*, 29 P.3d 1052, 1057 (N.M. Ct. App. 2001) (weighing eighteen-month delay "heavily against" the government in "simple DUI case"). Consequently, the first *Barker* factor weighs in favor of a determination that Aden was deprived of his right to a speedy trial. *See Hintze*, 2025 UT 3, ¶ 48.

B.      Reason for the Delay

¶11      The second factor in a *Barker* analysis requires the court to determine "whether the government or the criminal defendant is more to blame for the delay." *Id.* ¶ 49 (cleaned up). This factor is "crucial," *State v. Tuinman*, 2023 UT App 83, ¶ 59, 535 P.3d 362 (cleaned up), and "[f]or every delay attributed to the State, we must determine whether it was deliberate, neutral, or valid," *State*

---

3. The time in which charges are not pending is not held against the government on a speedy trial argument. *See, e.g.*, *State v. Steele*, 2010 UT App 185, ¶ 40, 236 P.3d 161. But such time may implicate the Due Process Clause. *Id.*

*v. Puente*, 2024 UT App 192, ¶ 18, 562 P.3d 1223. On this point, the *Barker* Court explained,

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

407 U.S. at 531 (cleaned up).

¶12 Here, the time attributable in some form to the State for the delay was 330 days. This includes the time from the State's request for the continuance in December 2022 to dismissal in January 2023, as well as the refiling of the charges in February 2023 to Aden's conviction in November 2023. However, Aden has pointed to no evidence on appeal that any of the delays caused by the State were the result of a deliberate attempt to "hamper the defense." *See id.*[4] By contrast, the time *clearly* attributable to Aden was 324 days. This includes the time from Aden's failure to appear for his January 2021 scheduling conference to the May

---

4. We decline Aden's invitation to hold the time from the continuance in September 2022 against the State because Aden stipulated to that continuance. We do hold the priority-based delays against the State, however, because the responsibility for delays based on "overcrowded courts" must ultimately be borne by the State. *See Barker v. Wingo*, 407 U.S. 514, 531 (1972). That said, we assign less weight to those delays than if they had been due to a deliberate attempt to delay on the State's part. *See State v. Hintze*, 2025 UT 3, ¶¶ 49–51, 567 P.3d 506.

2021 hearing where the court scheduled the preliminary hearing,[5] as well as the time from which Aden failed to appear at the January 2022 pretrial conference to when he appeared at the hearing that August.

¶13 The parties appear to have been roughly equally responsible for the delays in this case. However, Aden points to no evidence that the State deliberately delayed bringing the matter to trial, and he was clearly responsible in a deliberate way for his portion of the delay, given that he failed to appear on two separate occasions and warrants for his arrest were issued. Therefore, this factor is neutral at best, and it more appropriately weighs, if at all, marginally against a speedy trial violation. *Cf. Puente*, 2024 UT App 192, ¶ 24 ("Even if we were to count the 313 days of normal scheduling delays against the State, we detect absolutely no gamesmanship, tactical delay, or even negligence on the part of the State." (cleaned up)). Stated otherwise, "the circumstances of the case do not support affording this factor significant weight." *See Hintze*, 2025 UT 3, ¶ 53.

C.      Assertion of the Right

¶14     The next *Barker* factor requires a court to evaluate "whether and how" the defendant invoked his right to a speedy trial. *Id.* ¶ 54. "While this might not require the talismanic utterance of a particular phrase, at the very least, a defendant should manifest his desire to be tried promptly." *State v. Hintze*, 2022 UT App 117, ¶ 83, 520 P.3d 1 (Tenney, J., dissenting) (cleaned up), *rev'd*, 2025

---

5. While Aden appeared at the hearing in March 2021, he requested a series of continuances, and we hold those continuances against him in our calculation of the length of the delay. *See, e.g.*, *State v. Phathammavong*, 860 P.2d 1001, 1005 (Utah Ct. App. 1993) (concluding in a speedy trial case that "[t]he trial court properly attributed the delays to the defendant" when the defendant "requested several continuances").

UT 3, 567 P.3d 506. In practice, this factor requires an assessment of whether the defendant, through his "behavior during the course of the litigation," indicated "a desire to go to trial with dispatch." *Tuinman*, 2023 UT App 83, ¶ 65 (cleaned up). "Defendants who drag their feet and only half-heartedly express an interest in a speedy trial will have this factor weighed against them. On the other hand, defendants who do everything they could possibly do to evince a desire to go to trial will have this factor weighed in their favor." *Id.* (cleaned up).

¶15     It is clear on this record that Aden never expressly invoked his speedy trial right. And he dragged his feet for much of the first two years that the charges were pending against him. He did not specifically request a trial date until August 2022, and he twice failed to appear before that request. From that point on, Aden moved to dismiss the case when the State asked for a continuance on two different occasions. These actions showed a consistent effort to bring the matter to trial only during the last year or so in which the matter was pending.

¶16     Even though Aden sought a trial on two separate occasions and moved for dismissal when the State was not prepared to proceed in either instance, he dragged his feet for the first two years that the charges were pending against him. And while his requesting a trial setting and moving to dismiss were consistent with a general effort to move the case along, he never expressly invoked his right to a speedy trial. For these reasons, this factor weighs against a determination that Aden's speedy trial right was violated.

D.     Prejudice

¶17     The fourth and final "factor asks whether the defendant was prejudiced by the delay." *Hintze*, 2025 UT 3, ¶ 65. This factor frequently is the "most important" in the *Barker* inquiry because courts are "reluctan[t] to find a speedy trial deprivation where

there is no prejudice."[6] *Id.* (cleaned up). Courts must assess prejudice in "light of the interests of defendants which the speedy trial right was designed to protect." *Id.* ¶ 66 (cleaned up). Those interests include minimizing "the possibility that the defense will be impaired," "prevent[ing] oppressive pretrial incarceration," and "minimiz[ing] anxiety and concern of the accused." *Barker*, 407 U.S. at 532. Of these concerns, the most serious is the first "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

¶18 Aden all but acknowledges that the delays did not impair his defense. He does not claim that any evidence was destroyed or that any defense witnesses were unable to testify due to the delay. *See id.* (explaining that "prejudice is obvious" when "witnesses die or disappear during a delay"); *cf. State v. Tiedemann*, 2007 UT 49, ¶ 42, 162 P.3d 1106 (observing that "loss or destruction of evidence"—even in the absence of the government's culpability—can be "so critical to the defense as to make a criminal trial fundamentally unfair" (cleaned up)). While he correctly notes that he "was detained for 54 days awaiting trial during the original filing in his case," he omits that he was taken into custody in the first place only after he failed to appear for two different hearings. In other words, the responsibility for any "oppressive pretrial incarceration," *see Barker*, 407 U.S. at 532—at least between Aden and the State—belonged to Aden. He also asserts that "the long delay after his release . . . naturally subjected him to additional anxiety and concern." We don't doubt that Aden "experienced additional anxiety and concern about the

---

6. It is true that "a showing of prejudice may not be absolutely necessary in order to find a Sixth Amendment violation." *Hintze*, 2025 UT 3, ¶ 65 (cleaned up). But such instances are rare, *see, e.g.*, *id.*, and appellate courts will not infer prejudice where a defendant "fail[s] to articulate prejudice from the delay in his trial with any specificity," *United States v. Aquart*, 92 F.4th 77, 99 (2d Cir. 2024) (cleaned up), *cert. denied*, 145 S. Ct. 1071 (2025).

pending proceedings." *See Tuinman*, 2023 UT App 83, ¶ 72. But where Aden bore *all* of the blame for his pretrial incarceration, and where he has presented no evidence (or even an allegation) that his defense was impaired by the delays, the prejudice factor weighs strongly against a determination that he was deprived of a right to a speedy trial.

E.      Overall Balancing

¶19      Having considered each of the *Barker* factors, we now weigh them. Although the amount of time it took to resolve the case undeniably weighs in Aden's favor, none of the other factors do. Moreover, the prejudice factor—frequently the "most important" in the calculus, *Hintze*, 2025 UT 3, ¶ 65 (cleaned up)— weighs strongly against him. Consequently, our balancing of the *Barker* factors leads to the inescapable conclusion that Aden has not demonstrated that he was deprived of his Sixth Amendment right to a speedy trial in this case.

## CONCLUSION

¶20      Aden has not demonstrated that he was deprived of his right to a speedy trial under the Sixth Amendment. We therefore affirm his convictions.

───────────