*This opinion is subject to revision before final publication in the Pacific Reporter*

**2025 UT 3**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Petitioner,*

*v.*

CHAD HINTZE,
*Respondent.*

No. 20221057
Heard September 4, 2024
Filed March 13, 2025

On Certiorari to the Utah Court of Appeals

Third District Court, Salt Lake County
The Honorable Heather Brereton
No. 181903394

Attorneys:

Derek E. Brown, Att'y Gen., Andrew F. Peterson, Deputy Solic.
Gen., Salt Lake City, for petitioner

David Ferguson, Salt Lake City, for respondent

JUSTICE POHLMAN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE,
JUSTICE PETERSEN, and JUSTICE HAGEN joined.

JUSTICE POHLMAN, opinion of the Court:

## INTRODUCTION

¶1  In 2016, Chad Hintze, a registered sex offender, visited a public park in violation of his sex offender registry conditions. Hintze was charged with a class A misdemeanor for that conduct in 2018, by which time he was serving a prison sentence for a separate offense. But the State did not notify Hintze of the charge against him until two years later. Hintze first learned about the pending charge in March 2020, when he claims he was being

considered for parole on the separate offense. It was not until June 2020 that the State began prosecuting the class A misdemeanor, apparently prompted by a letter Hintze wrote to the district court requesting a hearing.

¶2　Shortly after Hintze was appointed counsel, he moved to dismiss that charge against him on the basis that his Sixth Amendment right to a speedy trial had been violated. He argued that he was prejudiced by the State's two-year delay, claiming he would have been granted parole in March 2020 had the pending charge been timely resolved. The district court disagreed. Applying a four-factor framework first articulated by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972), it determined that Hintze's prejudice claim was speculative and that, based on the totality of the circumstances, his speedy trial right was not violated.

¶3　After entering a conditional guilty plea, Hintze appealed, and a divided court of appeals reversed. It concluded that the four *Barker* factors weighed in Hintze's favor and required dismissal of the case on Sixth Amendment grounds.

¶4　The State petitioned this court for certiorari review. We granted its request and now decide whether the court of appeals erred in concluding that the State violated Hintze's Sixth Amendment right to a speedy trial by failing to prosecute his case for two years. Although the delay was significant, we conclude that the *Barker* factors, appropriately weighed, do not establish a speedy trial right violation. Accordingly, we reverse the court of appeals' decision, reinstate Hintze's conviction, and remand to the court of appeals for further proceedings.

## BACKGROUND[1]

¶5　In April 2011, Chad Hintze pleaded guilty to one count of attempted unlawful sexual activity with a minor, a class A misdemeanor. As a result of this conviction, Hintze was required to register as a sex offender in the state of Utah. *See* UTAH CODE

---

[1] Hintze pleaded guilty as charged, so we recite the facts relevant to the 2016 park incident as stated in the information and as depicted in the body camera footage of Hintze's police encounter. Further, we recite the facts relevant to Hintze's speedy trial claim based on the district court's oral findings.

§ 77-27-21.5(1)(n)(i)(V), (12)(a) (2011).[2] Since 2011, and at all relevant times in this case, Hintze has been registered as a sex offender in Utah.

¶6    Under Utah law, it is unlawful for registered sex offenders to "be in any protected area." *Id.* § 77-27-21.7(2) (2016).[3] The definition of "protected area" includes "a community park that is open to the public." *Id.* § 77-27-21.7(1)(a)(iv) (2016).

*The 2016 Park Incident*

¶7    In June 2016, Hintze was sitting with a teenage girl on a park bench along the Jordan River Parkway. Officers who were patrolling the area approached them and began asking questions. During their exchange, Hintze told the officers that he was twenty-three years old, and the girl reported that she was thirteen. Hintze initially claimed that the two were siblings, but he later admitted that they weren't related.

¶8    After asking for Hintze's name and birthdate, the first officer radioed dispatch for a records check and learned that Hintze was a registered sex offender. The officer informed Hintze that it was unlawful for him to be in the park because of his sex offender status. *See id.* § 77-27-21.7(1)(a)(iv), (1)(c), (2) (2016). Hintze acknowledged that the situation "look[ed] bad," but he insisted that nothing untoward was going on.

¶9    After the girl's mother picked her up from the park, the officers told Hintze that they could arrest and take him to jail for the violation, but they instead allowed Hintze to walk home. The State did not file any charges against Hintze based on the June 2016 park incident until March 2018.

---

[2] We cite the version of the statute requiring Hintze to register as a sex offender that was in effect at the time of his 2011 conviction. It has since been repealed and rehoused in Utah Code section 77-27-21.7. *See* H.B. 17, § 27, 2012 Leg., Gen. Sess. (Utah 2012).

[3] We cite the version of section 77-27-21.7 that was in effect in 2016 when Hintze violated his sex offender registry conditions. Since 2020, the legislature has made minor changes to the numbering and wording of the statute.

*Hintze's 2017 Conviction and Related Parole Hearing*

¶10 In June 2017, Hintze pleaded guilty to one count of attempted forcible sexual abuse, a third-degree felony, based on conduct unrelated to the 2016 park incident. In August 2017, Hintze was sentenced on that count to an indeterminate prison term not to exceed five years.

¶11 On March 15, 2018, Hintze attended an initial parole hearing for the 2017 felony. The Utah Board of Pardons and Parole chose not to release Hintze, and the Board's notes reflect that it anticipated a rehearing sometime in March 2020. The Board instructed Hintze to complete a sex-offender treatment program before the rehearing.

*The Charge for the 2016 Park Incident*

¶12 On March 26, 2018, the State filed an information charging Hintze with one count of "violation by sex offender of protected area," a class A misdemeanor, arising from the 2016 park incident. *See id.* § 77-27-21.7(2) (2016). But after the information was filed and an arrest warrant was issued, the case stalled. As a result, Hintze did not learn of the charge until two years later, in the spring of 2020. The cause of the delay is unclear, but no evidence suggests that the State knowingly delayed the prosecution.

¶13 Hintze testified before the district court that he completed his sex-offender treatment program in January 2020. Though it is not clear from the record whether Hintze received a parole rehearing, he testified that he "anticipat[ed]" being paroled after treatment but that he was "stopped" from getting parole because the pending charge "needed to be adjudicated." The court, however, did not accept this representation, stating that what the Board would have done had his pending charge been resolved by March 2020 was "speculative."[4]

---

[4] The court of appeals stated that "at [Hintze's] March 2020 parole hearing, the Board denied his request for parole." *State v. Hintze*, 2022 UT App 117, ¶ 13, 520 P.3d 1. But we haven't seen anything in the record confirming that the March 2020 rehearing was actually scheduled or ever held, much less that the Board affirmatively denied Hintze's parole request at any such hearing.

*The Prosecution of Hintze's Pending Charge and
His Motion to Dismiss*

¶14 In March 2020, shortly after learning about the outstanding warrant, Hintze mailed a letter to the district court, stating: "I have a case pending/warrant and would like to set up video court. Case #181903394. I can't afford an attorney and would like to be appointed one. I am located at The Kane County Jail."

¶15 After Hintze sent his letter, litigation surrounding the 2016 park incident moved along at a steady clip. Hintze made his initial appearance before the court in early June, and the court appointed counsel, who filed a demand for a jury trial that same month. Hintze was bound over at a preliminary hearing in early July, and he entered a plea of not guilty.

¶16 About one month later, in early August, Hintze filed two motions: a motion to dismiss based on an alleged violation of his Sixth Amendment right to a speedy trial, and a motion to suppress based on an alleged violation of his Fourth Amendment right to be free from unreasonable seizures.

¶17 In support of his Sixth Amendment claim, Hintze cited *Barker v. Wingo*, a landmark case that "identif[ied] some of the factors . . . courts should assess in determining whether a particular defendant has been deprived of his right [to a speedy trial]," including (1) the "[l]ength of delay," (2) "the reason for the delay," (3) "the defendant's assertion of his right," and (4) "prejudice to the defendant." 407 U.S. 514, 530 (1972). Analyzing these factors, Hintze asserted that there had been an "excessive delay in the prosecution" that was due to "negligence on the part of the State," that his March 2020 letter to the court invoked his Sixth Amendment right to a speedy trial, and that the delay prejudiced him because he was "denied parole once this case was filed" and because the case "weighed on [his] mind."

¶18 The State opposed Hintze's speedy trial motion, asserting that he "failed to establish unreasonable delay caused by the state, failed to properly assert his speedy trial rights[,] and failed to establish any harm caused by the delay."

¶19 At a hearing on the motion, the defense tried to prove prejudice through Hintze's testimony. He explained that in 2018, the Board denied him parole because he had not yet completed a sex-offender treatment program. Hintze further testified that he then anticipated being paroled—after completing the treatment

program in January 2020—but that "what stopped [him] from being paroled" was the existence of the pending warrant. He also asserted that the pending case caused him to experience "[a]nxiety, depression, [and] frustration."

¶20 After hearing arguments from the parties, the district court analyzed each of the *Barker* factors and denied Hintze's motion.

¶21 Regarding the first factor, length of the delay, the court agreed with the parties that the delay was long enough to trigger a full speedy trial analysis. The court further noted that it was "troubled by the fact that the case was filed in March of 2018 and Mr. Hintze was not brought to court until . . . 2020."

¶22 Regarding the second factor, the reason for delay, the court noted that this was "a somewhat neutral factor" because nothing "suggest[ed] that the delay occurred purposefully."

¶23 With respect to the third factor, Hintze's assertion of his right, the court observed that, although "[n]othing in [Hintze's March 2020] letter . . . assert[ed] a right to a speedy trial," he asserted the right in August 2020 when he filed his motion to dismiss. The court also noted that this case was different from the typical speedy trial case because "there's not been really any delay in moving the proceedings forward once the right to a speedy trial was invoked."

¶24 Lastly, the court determined that the delay did not harm Hintze. The court rejected Hintze's argument that the delay prejudiced him by interfering with his parole, reasoning that "what the [B]oard would do or not . . . is somewhat speculative." The court further rebuffed Hintze's claims of "generalized anxiety," describing it as something felt by "anyone who's facing criminal charges."

¶25 The court then weighed the totality of the circumstances and determined that the State did not violate Hintze's speedy trial right. Thus, the court denied his motion to dismiss. It also separately denied his motion to suppress.

¶26 Soon afterward, Hintze pleaded guilty, reserving his right to appeal the court's denial of his motions. Based on the parties' recommendation, the court subsequently closed the case without imposing a sentence.

*Hintze's Appeal*

¶27 Hintze appealed the district court's denials of his motion to dismiss and motion to suppress. In a split decision, the court of appeals concluded that Hintze's Sixth Amendment speedy trial right was violated. *State v. Hintze*, 2022 UT App 117, ¶¶ 3, 70, 520 P.3d 1. The court of appeals reversed Hintze's conviction and remanded the case to the district court with instructions to dismiss the charge. *Id*.

¶28 In its analysis, the court considered each of the four factors described in *Barker*. *Id*. ¶¶ 27–67. First, it determined that the two-year delay between the filing of the charge and the State's prosecution of Hintze "trigger[ed] the full four-factor *Barker* inquiry." *Id*. ¶ 27. The court then concluded that the first *Barker* factor—the length of the delay—"weighs clearly in favor of Hintze" given that "the State did nothing for two years . . . in a relatively simple case that could have easily been resolved well within that time period." *Id*. ¶ 28.

¶29 On the second *Barker* factor—the reason for the delay—the court observed that the blame for the two-year delay "rests *entirely* with the State" and that the "State's reason for delaying this case was simple negligence." *Id*. ¶¶ 30–31. The court determined that "negligence is an example of a neutral reason for delay," which "weighs quite clearly against the State[,] . . . albeit less heavily than if there had been evidence of deliberate intent to harm Hintze's defense." *Id*. ¶¶ 31, 33 (cleaned up).

¶30 On the third factor—the defendant's assertion of the speedy trial right—the court viewed Hintze's March 2020 letter to the district court as "a clear attempt to get the case moving more speedily toward trial." *Id*. ¶ 38. It reasoned that a defendant's assertion of the right need not necessarily include a specific mention of a "trial," and that the court should instead look at "whether the defendant's behavior during the course of the litigation evinces a desire to go to trial." *Id*. ¶ 41 (cleaned up). Applying this standard, the court considered the circumstances surrounding the letter, such as that it was written and filed pro se and that Hintze "quickly follow[ed] that request up with a request for a preliminary hearing and a specific motion invoking the Sixth Amendment." *Id*. ¶ 39. The court remarked that "given the facts of this case, the arrow on this factor's Weigh-O-Meter is flatlined toward Hintze's side." *Id*. ¶ 41.

¶31 On the fourth factor—prejudice—the court determined Hintze was harmed by the delay because "it is at least reasonably probable that, under the specific circumstances presented here, Hintze would have been afforded the opportunity for parole in March 2020 if this case had been resolved in 2018." *Id.* ¶ 59. In reaching its conclusion, the court initially relied on Hintze's testimony "that 'what stopped [him] from being paroled' was the presence of this unresolved case." *Id.* ¶ 52 (alteration in original). Because "[t]hat testimony stands unrebutted on the record," the court reasoned it had "no evidence-based reason to believe that, if this case had been resolved in Hintze's favor prior to March 2020, he would have been denied parole." *Id.*

¶32 The court then "indulge[d] in extra-record speculation" and hypothesized about what would have happened at a March 2020 parole hearing had the pending charge timely been resolved. *Id.* ¶¶ 53–59. It expressed concern about basing a speedy trial violation on the "mere possibility of prejudice," observing that "a defendant's right to a speedy trial is not violated if his claims of prejudice are insubstantial, speculative, and premature." *Id.* ¶ 60 (cleaned up). So it instead adopted a "reasonable probability of prejudice" standard as a threshold against which to judge speedy trial prejudice claims. *Id.* ¶¶ 61–64 (cleaned up). It explained that, as "[a]pplied to the speedy trial context, this means that a defendant—in cases where the causal link for prejudice is at issue— must demonstrate at least a reasonable probability that he or she sustained actual prejudice as a result of the State's failure to prosecute the case in a timely manner." *Id.* ¶ 64.

¶33 Finally, the court took up the task of balancing the four factors, concluding that Hintze's speedy trial right was violated because "all four factors weigh in Hintze's favor." *Id.* ¶ 68. The court further noted that "Hintze should win the balancing test unless the prejudice analysis points convincingly toward an absence of prejudice" because "the first three *Barker* factors so clearly line up in Hintze's column." *Id.* ¶ 69. Because the court of appeals reversed Hintze's conviction on speedy trial grounds, it did not resolve whether the district court erred in denying Hintze's motion to suppress.[5] *Id.* ¶ 24 n.3.

---

[5] The court noted, however, that it did "not disagree" with Judge Tenney's conclusion in his dissenting opinion that Hintze's

(continued . . .)

¶34 Judge Tenney dissented, writing that he did not "believe that Hintze's speedy trial right was violated under the circumstances of this case." *Id.* ¶ 74 (Tenney, J., dissenting). Judge Tenney specifically disagreed with the majority's assessment of the third and fourth *Barker* factors. *See id.* ¶¶ 80–122.

¶35 Regarding the third, Judge Tenney noted that even though Hintze made "a relatively prompt assertion" of his speedy trial right, *id.* ¶ 94, this factor was "something of a wash" because "the State promptly responded to [his] motion, the court ruled on the motion in September 2020, and the case was then resolved by way of a plea that very same month," *id.* ¶ 139.

¶36 Judge Tenney also disagreed with the majority's conclusion that Hintze had shown prejudice. He reasoned that the "mere possibility of prejudice is not sufficient" to show a speedy trial violation, and that Hintze's claim that he was denied parole because of the pending charge "fails for lack of proof." *Id.* ¶¶ 117, 122 (cleaned up). Judge Tenney also declined to decide whether the "reasonable probability standard" should be adopted in this context, *id.* ¶ 122 n.10, but he resolved that even if the standard applied, "there's just too much *maybe* at the heart of the majority's conclusion that Hintze was prejudiced" to deem the standard met, *id.* ¶¶ 121–22.[6]

¶37 We granted the State's petition for certiorari review.

## ISSUE AND STANDARD OF REVIEW

¶38 The State asks us to review whether the court of appeals erred in holding that Hintze's Sixth Amendment speedy trial right was violated. "On a writ of certiorari, we review the decision of the court of appeals, not that of the district court, and apply the same standard[] of review used by the court of appeals." *State v. Wilder*,

---

motion to suppress should have been granted. *Hintze*, 2022 UT App 117, ¶ 52. But the court expressly declined to "incorporate any analysis" of Hintze's arguments regarding the propriety of the district court's denial of his motion to suppress into its opinion. *Id.* ¶ 24 n.3.

[6] Because he would not have dismissed Hintze's case based on a speedy trial violation, Judge Tenney addressed Hintze's appeal of the district court's denial of his motion to suppress and concluded that the district court erred in denying that motion. *See id.* ¶¶ 142–73 (Tenney, J., dissenting).

2018 UT 17, ¶ 15, 420 P.3d 1064 (cleaned up). Whether a defendant's right to a speedy trial has been violated is "a question of law reviewed for correctness." *State v. Younge*, 2013 UT 71, ¶ 10, 321 P.3d 1127.

## ANALYSIS

### I. THE SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL

¶39 The Sixth Amendment to the United States Constitution establishes a criminal defendant's right to a speedy trial. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. The right is "designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the . . . impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *United States v. MacDonald,* 456 U.S. 1, 8 (1982).

¶40 Although the right to a speedy trial is "fundamental," *State v. Younge*, 2013 UT 71, ¶ 16, 321 P.3d 1127 (cleaned up), it "is generically different from any of the other rights enshrined in the Constitution," *Barker v. Wingo*, 407 U.S. 514, 519 (1972). The right has been described as "amorphous, slippery, and necessarily relative. It is consistent with delays and dependent upon circumstances." *Vermont v. Brillon*, 556 U.S. 81, 89 (2009) (cleaned up). "[A] speedy trial does not mean an immediate trial because . . . 'pretrial delay is often both inevitable and wholly justifiable.'" *State v. Samora*, 2022 UT App 7, ¶ 18, 504 P.3d 195 (quoting *Doggett v. United States*, 505 U.S. 647, 656 (1992)). And the "only possible remedy" for a violation of the speedy trial right is the "unsatisfactorily severe remedy of dismissal of the indictment." *Barker*, 407 U.S. at 522; *accord Younge*, 2013 UT 71, ¶ 16.

¶41 The framework for analyzing Sixth Amendment speedy trial claims comes from the United States Supreme Court's decision in *Barker v. Wingo*, which established a "balancing test, in which the conduct of both the prosecution and the defendant are weighed." 407 U.S. at 530. In *Barker*, the Supreme Court declined to adopt various "rigid approaches" to evaluating the speedy trial right, such as "requir[ing] a criminal defendant to be offered a trial within a specified time period" or "restrict[ing] consideration of the right to those cases in which the accused has demanded a speedy trial." *Id*. at 522–24. Instead, the Court instructed courts evaluating Sixth Amendment speedy trial right claims to "engage in a difficult

and sensitive balancing process," *id*. at 533, assessing the totality of relevant circumstances and approaching each case "on an ad hoc basis," *id*. at 530.

¶42 To that end, the Supreme Court identified "some of the factors which courts should assess" in a speedy trial analysis, including the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* But the Court also made clear that none of the four factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id*. at 533.

¶43 With these instructions in mind, we discuss the unique circumstances of this case and apply the *Barker* factors.[7] As explained below, we agree with the district court that, based on the totality of circumstances, Hintze's right to a speedy trial was not violated by the State's two-year delay in prosecuting his 2016 offense. We therefore conclude that the court of appeals erred in concluding that Hintze's speedy trial rights were violated.

*A. Length of Delay*

¶44 The first *Barker* factor, length of the delay, "is actually a double enquiry." *Doggett*, 505 U.S. at 651. To trigger a Sixth Amendment speedy trial analysis, an accused must allege that the length of time between formal accusation and trial has "crossed the threshold dividing ordinary from presumptively prejudicial delay." *Id*. at 651–52 (cleaned up). "If the delay is not uncommonly long, the inquiry ends there." *Younge*, 2013 UT 71, ¶ 18 (cleaned up); *see also Doggett*, 505 U.S. at 652 (explaining that where the initial threshold is not met, the inquiry ends because the defendant "cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness"). Generally, a delay approaching one year is sufficient to clear this hurdle and trigger a full *Barker* inquiry. *Doggett*, 505 U.S. at 652 n.1; *Younge*, 2013 UT 71, ¶ 18.

---

[7] The parties agree that the first two *Barker* factors—the length of and reason for the delay—weigh in Hintze's favor. But because they disagree about how the two factors should be weighted with the other two factors in the overall analysis, we discuss all four.

¶45 In the second part of the inquiry, courts examine "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett*, 505 U.S. at 652. This step is important because "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Id.*

¶46 The significance of this factor in the overall speedy trial analysis depends on the circumstances of the case. For instance, a lengthy delay in a case involving complex charges is less significant in the totality of circumstances than it would be in a relatively simple case. *See Barker*, 407 U.S. at 531 ("[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.").

¶47 In this case, the length of delay is just over two years. The State filed charges against Hintze in March 2018, but it failed to take any steps to prosecute the case until after March 2020.[8] Both parties agree that the two-year delay in this case is long enough to trigger a full *Barker* analysis.

¶48 Regarding the second part of the inquiry, the two-year delay is double the length of time that triggers a *Barker* analysis. Although a two-year delay may be perfectly reasonable in a case involving complex charges, this case involved a straightforward status offense that ordinarily could be resolved in well under two years. Thus, given the relatively simple nature of this case, the two-year delay weighs in favor of finding a violation of Hintze's Sixth Amendment speedy trial right.

*B. Reason for the Delay*

¶49 The second *Barker* factor asks "whether the government or the criminal defendant is more to blame for [the] delay." *Doggett*, 505 U.S. at 651. In considering this factor, courts must assign "different weights . . . to different reasons." *Barker*, 407 U.S. at 531.

---

[8] The initial delay between the 2016 park incident and the information filed against Hintze in 2018 does not factor into our speedy trial analysis because the Sixth Amendment speedy trial right "does not attach until . . . a defendant is arrested or formally accused." *Betterman v. Montana*, 578 U.S. 437, 441 (2016). And although Hintze's case was not resolved until September 2020, he does not assert that the time between March 2020 and September 2020 is relevant to his claim.

In *Barker*, the Supreme Court drew a distinction between deliberate, neutral, and valid reasons for delay:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence . . . should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Id.* (cleaned up).

¶50   The Court elaborated in *Doggett* that "the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows." 505 U.S. at 657. Thus, where the reason for delay is a "more neutral" one such as negligence, courts should consider the length of the delay in deciding how much weight the factor deserves. *See Barker*, 407 U.S. at 531.

¶51   In this case, both parties agree that Hintze played no role in the delay and that the delay is solely attributable to the State's negligence. And although the record does not reveal why the prosecution was delayed, Hintze does not contend that the State deliberately stalled the prosecution, and the district court found no evidence of a knowing delay.

¶52   Because the State's negligence was the sole cause of the delay, the second *Barker* factor weighs in favor of a Sixth Amendment speedy trial violation, though not as heavily as it would if the State had deliberately delayed Hintze's prosecution. Further, the length of delay impacts the weight we give to this factor. While the two-year delay in this case is substantial, it is not one that we would call "extraordinary." *See Doggett*, 505 U.S. at 652 (delay of eight and a half years is extraordinary); *see also Barker*, 407 U.S. at 533 (delay of over five years is extraordinary); *Younge*, 2013 UT 71, ¶ 18 (delay of nine and a half years is extraordinary). Thus, the length of delay here does not warrant affording this factor heavy weight.

¶53 In sum, the second *Barker* factor weighs in favor of a speedy trial violation, though the circumstances of the case do not support affording this factor significant weight.

*C. Assertion of the Right*

¶54 The third *Barker* factor asks whether and how the Sixth Amendment right to a speedy trial was asserted. *Barker*, 407 U.S. at 531–32. A defendant's assertion—or nonassertion—can carry "strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id.* This is because "[t]he more serious the deprivation, the more likely a defendant is to complain." *Id.* at 531. In other words, because a defendant is more likely to assert the right when the delay is unreasonable and prejudice is likely to ensue, the assertion of the right can be probative of the violation's severity.

¶55 Conversely, if a defendant does not assert the right to a speedy trial, proving a violation will be more difficult. *Id.* at 532. This is in part because of the right's unique nature. In some cases, "deprivation of the right may work to the accused's advantage," and a defendant may acquiesce to delays for strategic reasons. *Id.* at 521. By not asserting the right, a defendant may suggest that the defendant did not actually want a trial or, at a minimum, that the delay is not causing harm. So, "barring extraordinary circumstances," courts are usually reluctant to identify a speedy trial right violation "on a record that strongly indicates . . . that the defendant did not want a speedy trial." *Id.* at 536.

¶56 In this case, upon learning of the outstanding charge against him in March 2020, Hintze promptly mailed a letter to the district court requesting "to set up video court" and the appointment of legal counsel. The court set a hearing, counsel was appointed, and, by early July 2020, Hintze was bound over. Hintze then filed a motion to dismiss in August 2020, asserting that his Sixth Amendment speedy trial right had been violated by the two-year delay. He asked that his nonassertion of the right during the two-year delay not be held against him given that he had been unaware of the pending charge. But he invited the court to deem the third *Barker* factor "satisfied" based on his March 2020 letter, which reflected his "desire to be seen and heard on this case."

¶57 In assessing this factor, the district court declined to recognize the March 2020 letter as an assertion of Hintze's speedy trial right, but it credited him for asserting the right in his August 2020 motion. Ultimately, however, the factor did not appear to carry much weight—positive or negative—in the court's overall analysis. In discussing the factor, the court observed that this case differed from the typical scenario where a defendant is aware of the

delay and the assertion of the speedy trial right may inform whether the defendant was sincerely interested in receiving a speedy trial.

¶58 In the court of appeals, Hintze challenged the district court's view and argued that his March 2020 letter was the functional equivalent of a Sixth Amendment speedy trial right assertion for purposes of *Barker*. That challenge generated considerable debate between the court's majority and dissent. *See State v. Hintze*, 2022 UT App 117, ¶¶ 35–42, 520 P.3d 1 (majority opinion); *id.* ¶¶ 85–92 (Tenney, J., dissenting).

¶59 The majority emphasized Hintze's efforts to move his case along after he learned of the charge against him and ultimately opined that, viewed in context, the letter was "a clear attempt to get the case moving more speedily toward trial." *Id.* ¶ 38. The majority further reasoned that Hintze, having "quickly follow[ed]" up his pro se request with a "specific motion invoking the Sixth Amendment, ha[d] taken actions that result in the third factor weighing in his favor." *Id.* ¶ 39.

¶60 In contrast, the dissent opined that "to gain the benefit of this factor, . . . a defendant must do something that puts the court and the State on notice that he would prefer to be *tried* as soon as possible." *Id.* ¶ 90 (Tenney, J., dissenting) (cleaned up). It thus determined that because the March 2020 letter "did not request a trial" or "somehow invoke the Sixth Amendment," it was not an assertion of Hintze's speedy trial right. *Id.* ¶ 85. Still, the dissent did not "hold it against Hintze that he didn't assert the speedy trial right from the filing of the charge in March 2018 until March 2020," nor did it condemn Hintze for "fail[ing] to assert the right from March 2020 to June 2020," while he was unrepresented. *Id.* ¶ 93. Instead, it credited Hintze with having made a "relatively prompt assertion of the right" in the August 2020 motion, *id.* ¶ 94, and it ultimately viewed the factor "as something of a wash," *id.* ¶ 139.

¶61 Now, on certiorari review, the State agrees with the court of appeals that Hintze's nonassertion of his speedy trial right during the two-year delay should not be held against him. The State also accepts that Hintze asserted his speedy trial right in his August 2020 motion to dismiss.[9] Yet the State contends that the

---

[9] The State makes this concession while observing that it could argue that a motion to dismiss for a speedy trial violation should

(continued . . .)

court was wrong to weigh the third *Barker* factor in Hintze's favor, arguing that it erred in concluding that Hintze effectively asserted his speedy trial right in his March 2020 letter. The State concedes that "implicit assertions [of the speedy trial right] are not out of the question, so long as context makes the specific desire to go to trial clear." But it argues that because Hintze's letter did not mention a trial, it does meet this standard. And although the State credits the August 2020 motion as an assertion of the right, it says the factor weighs against Hintze—or, at most, is neutral—because the assertion was made "just once" and "was short-lived."

¶62 We agree with the State in part. We agree that for this factor to weigh in a defendant's favor, a defendant should, "[a]t the very least, . . . manifest his desire to be tried promptly." *United States v. Duran-Gomez*, 984 F.3d 366, 378 (5th Cir. 2020) (cleaned up). This does not require that a defendant use specific words or manifest that desire in one particular way, so long as the defendant demonstrates a desire for a speedy trial.

¶63 But we do not accept the State's invitation to weigh this factor against Hintze, nor do we resolve whether the March 2020 letter is an assertion of the speedy trial right. Instead, we conclude that this is one of those cases where the third *Barker* factor weighs neutrally because Hintze was unaware of the charges during the relevant delay. *See, e.g.*, *United States v. Richards*, 707 F.2d 995, 997 (8th Cir. 1983) (explaining that the third *Barker* factor "has no application" when a defendant was unaware of the pending charge until his arrest); *United States v. Vaughan*, 643 F. App'x 726, 731 (10th Cir. 2016) (deeming the third *Barker* factor neutral where the defendant had no knowledge of his indictment during a delay of twenty-two months).

¶64 As explained, the third *Barker* factor's usefulness primarily depends on how it illuminates the extent to which a defendant is harmed by the deprivation of a speedy trial. *See supra* ¶¶ 54–55. But where the defendant is unaware of the pending charge during the delay, there is no real meaning to attribute to a subsequent

_____

not be viewed as an assertion of the speedy trial right if, as in this case, the motion is unaccompanied by an alternative request for a jury trial. The State explains that it is not making that argument here because, in August 2020, jury trials had been suspended due to the COVID-19 pandemic and an alternative request for a trial setting arguably would have been futile.

16

assertion or nonassertion of the right. Thus, we disagree with the court of appeals' view that this factor weighs "quite clearly in Hintze's favor," *Hintze*, 2022 UT App 117, ¶ 42, and we, like the district court and the dissent, afford it no weight in the overall *Barker* analysis.

*D. Prejudice to the Defendant*

¶65 The fourth *Barker* factor asks whether the defendant was prejudiced by the delay. In *Barker* and subsequent cases, the Supreme Court "expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial." *Moore v. Arizona*, 414 U.S. 25, 26 (1973) (per curiam); *see also Barker*, 407 U.S. at 533 (regarding "none of the four factors . . . as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial"). In practice, however, prejudice is often the "most important[]" factor in a speedy trial analysis. *State v. Ossana*, 739 P.2d 628, 631 (Utah 1987). As our court of appeals recognized, "although a showing of prejudice may not be absolutely necessary in order to find a Sixth Amendment violation, courts have great reluctance to find a speedy trial deprivation where there is no prejudice." *Hintze*, 2022 UT App 117, ¶ 43 (cleaned up); *see also United States v. Aquart*, 92 F.4th 77, 99 (2d Cir. 2024) ("[T]his court generally has been reluctant to find a speedy trial violation in the absence of genuine prejudice." (cleaned up)); *United States v. Martinez*, 776 F.2d 1481, 1483 (10th Cir. 1985) ("[I]n the absence of prejudice, we have great reluctance to dismiss an indictment for prosecutorial delay.").[10]

---

[10] To be sure, courts have discerned speedy trial right violations in the absence of particularized prejudice. But that generally occurs only when the length of delay is extreme. *See Doggett*, 505 U.S. at 655–58 (relying on presumptive prejudice to find a speedy trial right violation where the government negligently delayed defendant's prosecution for six years, reasoning that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify"); *see also United States v. Muhtorov*, 20 F.4th 558, 653 (10th Cir. 2021) ("Generally, the court requires a delay of six years before allowing the delay itself to constitute prejudice." (cleaned up)); *Goodrum v. Quarterman*, 547 F.3d 249, 260 (5th Cir. 2008) (stating "the *Doggett*

(continued . . .)

¶66 The Supreme Court has instructed that prejudice "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. Specifically, those interests are: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* The Court has also observed that "[b]ecause 'prejudice' may take many forms, such determinations must be made on a case-by-case basis in the light of the facts." *United States v. Taylor*, 487 U.S. 326, 341 n.13 (1988).

¶67 Here, Hintze defends the court of appeals' view that he was prejudiced because "he spent additional time behind bars as a result of the State's delay in prosecuting this case." *Hintze*, 2022 UT App 117, ¶ 59. The district court rejected that assertion, stating that what the Board would have done had his pending charge been resolved by March 2020 was "speculative." But the court of appeals disagreed and ultimately determined that "the important fourth *Barker* factor . . . weighs, at least to some extent, in Hintze's favor." *Id.* ¶ 67.

¶68 In making its assessment, the court of appeals acknowledged that, generally, "a defendant's right to a speedy trial is not violated if his claims of prejudice are insubstantial, speculative, and premature." *Id.* ¶ 60 (cleaned up). But in contrast to the district court, it accepted Hintze's testimony that the pending charge was the reason he wasn't paroled in March 2020. *Id.* ¶ 52. The court reasoned that because Hintze's testimony was "unrebutted on the record," it had "no evidence-based reason to believe" that Hintze would have been denied parole "if this case had been resolved in Hintze's favor prior to March 2020." *Id.*

¶69 Recognizing that "a mere possibility of prejudice" is insufficient to sustain a speedy trial right violation, the court ultimately adopted a reasonable probability of prejudice standard

---

presumption applies only where the delay is at least 5 years"); *State v. Labrecque*, 307 A.3d 878, 891–92 (Vt. 2023) (observing that presumptive prejudice under a *Barker* analysis is generally not triggered "for delays less than 5 or 6 years"). Hintze does not argue that prejudice should be presumed in this case based on the two-year delay.

as a threshold against which to judge speedy trial prejudice claims. *Id.* ¶¶ 60–64 (cleaned up). With that standard in mind, the court hypothesized about what would have happened had the pending charge been resolved in time for a March 2020 parole hearing. *Id.* ¶¶ 53–59, 66–67. It observed that "in many cases in which a defendant claims prejudice from something like a lost chance at parole[,] . . . the defendant's claims may be too speculative to credit." *Id.* ¶ 67. But it concluded that Hintze's claim was "sufficiently supported by the facts of the case, by reasonable inferences to be drawn therefrom, and by common experience," to "rise above mere speculation" and sustain the conclusion that "it [is] at least reasonably probable that Hintze sustained actual prejudice in the form of longer incarceration as the result of the State's delay." *Id.*

¶70 Before us, the parties wage separate challenges against the court of appeals' analysis of *Barker*'s prejudice prong. The State endorses the court's adoption of a "reasonable probability of prejudice" standard for speedy trial right prejudice claims, but it argues that Hintze's assertion of prejudice fails to meet that threshold and that the prejudice factor should be weighed against him.

¶71 In contrast, Hintze argues that the court of appeals "reached the right conclusion, although not entirely for the right reasons." Hintze faults the court's adoption of a "reasonable probability of prejudice" standard, arguing that it places "an unduly high burden on [him] that is inconsistent with speedy trial caselaw" and "puts Utah on a different playing field than every other jurisdiction." Still, Hintze argues that regardless of how prejudice is assessed, the court was right to weigh the fourth *Barker* factor in his favor because he "easily steps over" whatever "threshold" the court applies.

¶72 As we explain below, we conclude that the court of appeals erred in adopting a "reasonable probability of prejudice" standard to judge a defendant's claim of prejudice in the speedy trial context. We also conclude that the court erred in weighing the prejudice factor in Hintze's favor. Instead, we agree with the State that the district court got it right—that Hintze's prejudice claim was too speculative to support a speedy trial right violation in this case.

1. The Reasonable Probability of Prejudice Standard

¶73 Although courts have applied the *Barker* factors in thousands of cases over the past five decades, the Supreme Court

offers little concrete guidance on how prejudice claims should be judged. As the court of appeals aptly observed, some courts, in some circumstances, have concluded that a "mere possibility of prejudice" is insufficient to demonstrate prejudice in this context, *id.* ¶ 60 (cleaned up) (citing cases), and others have expected defendants to show at least a "reasonable possibility" of prejudice, a "plausible claim of prejudice," or "actual prejudice apparent on the record" to sustain their speedy trial right claims, *id.* ¶ 61 (cleaned up) (citing cases).

¶74 These standards derive in some part from statements the Supreme Court has made before and after *Barker*. In evaluating a pre-*Barker* speedy trial claim in *United States v. Ewell*, the Court rejected a speedy trial claim, in part, because the defendants' "claim of possible prejudice in defending themselves [was] insubstantial, speculative and premature." 383 U.S. 116, 122 (1966). In particular, the Court rejected the defendants' claims of prejudice where they failed to specify what evidence was lost or which witnesses had disappeared. *Id.*

¶75 In *Moore v. Arizona*, decided in the year after *Barker*, the Court again referred to "possible prejudice," this time instructing that "no court should overlook the *possible* impact pending charges might have on [a defendant's] prospects for parole and meaningful rehabilitation." 414 U.S. at 26–27 (cleaned up) (emphasis added). But the Court remanded the case for the lower court to conduct a *Barker* analysis and did not explain what showing was required. *See id.*

¶76 Finally, in *United States v. Loud Hawk*, the Court noted that the appellate court had given "little weight" to the fourth *Barker* factor based on "the possibility" that a defense might be impaired due to the loss of witnesses' memories during the delay.[11] 474 U.S. 302, 315 (1986) (cleaned up). Without elaboration, the Court stated: "That possibility of prejudice is not sufficient to support [the

---

[11] The defendants in *Loud Hawk* based their prejudice claim on the absence or loss of memory of witnesses, but apparently there was no showing that the witnesses would have been favorable to the defense. *United States v. Loud Hawk*, 741 F.2d 1184, 1193 (9th Cir. 1984), *rev'd*, 474 U.S. 302 (1986). The appellate court gave little weight to this factor, noting that the showing was "somewhat speculative." *Id.*

defendants'] position that their speedy trial rights were violated."[12] *Id.*

¶77 Seeking a more definable standard against which to judge speedy trial prejudice claims, the court of appeals adopted a "reasonable probability" test—a legal standard appellate courts regularly use in evaluating claims of trial error or prosecutorial misconduct. *Hintze*, 2022 UT App 117, ¶ 62 (cleaned up) (citing cases). The court concluded that it was logical to apply this standard because it's applied "in other similar contexts," Utah courts are familiar with it, and we have "a robust body of case law . . . setting out the contours of what a defendant must show to meet it." *Id.* ¶ 63.

¶78 Hintze, however, urges us to reject this standard, arguing that it fails to "correctly capture the mandates of *Barker* or its progeny" and "depart[s] without a significant reason . . . from other . . . courts whose decisions adhere more closely to Supreme Court discussion of the right." Hintze contends that we "should decline to set a hard line on prejudice at the 'probability of prejudice' standard promulgated" by the court of appeals and instead assess prejudice along a spectrum. He suggests, for example, that a showing that prejudice is possible should "tip[] the prejudice factor in favor of the defendant," while a showing that prejudice is reasonably probable would add to the factor's weight. He further submits that "[c]oncrete prejudice would weigh more heavily still, permitting a court to grant a dismissal even when other *Barker* factors present fewer concerns."

¶79 We agree with Hintze that the "reasonable probability" standard, while familiar, does not align with *Barker* and the Supreme Court's uniquely flexible balancing test. Although we've had limited guidance from the Supreme Court since it adopted the

---

[12] In the State's view, the Supreme Court held in *Loud Hawk* that "possibility of prejudice" is "inadequate" in a speedy trial claim. We don't read the Supreme Court's statement the same way. Immediately after describing the claimed prejudice—that the defense *may well* be impaired due to the delay—the Supreme Court said, "*That* possibility of prejudice is not sufficient." *Loud Hawk*, 474 U.S. at 315 (emphasis added). In other words, the Supreme Court rejected the defendants' particular showing as insufficient to sustain their claim. The Court did not state that the "possibility of prejudice" is never enough to sustain a speedy trial right violation.

*Barker* factors, the Court has rejected invitations to adopt hard lines against which to judge speedy trial right claims. The prejudice factor in *Barker* is a factor to be weighed with and against other factors. And unlike prejudice requirements in other contexts, it is not a component of a claim that must be proven to secure relief.[13] *See, e.g., Doggett*, 505 U.S. at 655 (stating that "consideration of prejudice is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim").

¶80 Thus, we are not prepared to say that defendants must meet a certain threshold showing to have their prejudice claims considered as part of the "difficult and sensitive balancing" required by *Barker*. 407 U.S. at 533. Instead, we view prejudice in this context as existing along a spectrum. The more significant the prejudice and more certain the proof, the more weight the factor should be given. In contrast, the less significant or more speculative the prejudice, the less weight, if any, it deserves. *See State v. Holtslander*, 629 P.2d 702, 709 (Idaho 1981) (stating that the "speculativeness [of the prejudice claim] warrants the limiting of the weight, if any, given to" *Barker*'s prejudice factor).

¶81 And ultimately, a claim of prejudice based on nothing more than a possibility is unlikely to support a speedy trial claim

---

[13] The three contexts the court of appeals pointed to where a "reasonable probability" standard applies all require a defendant to show prejudice before the defendant can secure relief. *See Hintze*, 2022 UT App 117, ¶ 62. Specifically, to prove ineffective assistance of counsel under the Sixth Amendment, a defendant must demonstrate prejudice flowing from an attorney's deficient performance. *See, e.g., State v. Garcia*, 2017 UT 53, ¶¶ 35–37, 424 P.3d 171. Similarly, to establish a *Brady* violation for the prosecution's failure to disclose exculpatory evidence, "prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *see also Tillman v. State*, 2005 UT 56, ¶ 28, 128 P.3d 1123 (identifying prejudice as one of "three components of a *Brady* prosecutorial misconduct claim"). And an appellate court will not reverse a trial court's erroneous evidentiary decision unless the error was harmful. *See, e.g., State v. Richardson*, 2013 UT 50, ¶¶ 40, 40 n.8, 308 P.3d 526; *see also* UTAH R. EVID. 103(a) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party . . . .").

unless other factors weigh heavily in the defendant's favor. *See, e.g.*, *Doggett*, 505 U.S. at 657–58 (finding a speedy trial right violation despite unspecified prejudice where government's negligence "cause[d] delay six times as long as that generally sufficient to trigger judicial review"). Although this standard is less precise than the one adopted by the court of appeals, we ultimately view it as consistent with *Barker* and the ad hoc approach to analyzing this "amorphous, slippery, and necessarily relative" right. *Brillon*, 556 U.S. at 89 (cleaned up).

### 2. Hintze's Prejudice Claim

¶82 With this standard in mind, we conclude that the court of appeals erred in weighing *Barker*'s prejudice factor in Hintze's favor.

¶83 The district court rejected Hintze's claim that the two-year delay prejudiced him by interfering with his parole, reasoning that what the Board would have done had his charge been resolved sooner "is somewhat speculative." The court of appeals acknowledged that assessing Hintze's prejudice—which is necessarily based on an unknown—requires engaging in some speculation. *See Hintze*, 2022 UT App 117, ¶¶ 50, 67. But based on Hintze's unrebutted testimony that "what stopped [him] from being paroled" was the pending charge, it saw "no choice but to conclude that it is more likely than not that" Hintze would have been paroled had the charge been timely resolved. *Id.* ¶ 52 (alteration in original). The court of appeals also separately concluded that Hintze's claim satisfied the "reasonable probability" standard it adopted, stating that his claim was "sufficiently supported by the facts of the case, by reasonable inferences to be drawn therefrom, and by common experience" to "rise above mere speculation." *Id.* ¶¶ 66–67. We disagree with the court of appeals' assessment for two reasons.

¶84 First, the court of appeals accepted Hintze's testimony that the pending charge "stopped" him from being paroled on the basis that it was unrebutted. *Id.* ¶ 52. But the district court was not obligated to accept that testimony as true. "In a . . . proceeding in which the judge serves as fact finder, the court has considerable discretion to assign relative weight to the evidence before it, including the right to minimize or even disregard certain evidence." *SA Grp. Props. Inc. v. Highland Marketplace LC*, 2017 UT App 160, ¶ 24, 424 P.3d 187 (cleaned up). Because the judge, as a fact finder, "is in the best position to judge the credibility of

witnesses," the judge is "free to disbelieve their testimony." *Id.* (cleaned up).

¶85   Here, although the district court did not make an express credibility ruling or a factual finding regarding the reason Hintze was not granted parole in March 2020, it appeared to have rejected his testimony as unreliable when it deemed his claim speculative. And that's not surprising. There are no facts in the record from which to infer that Hintze was denied parole in March 2020 because of his pending charge. The only evidence presented on this point was (1) Hintze's testimony that he "anticipat[ed]" being paroled after completing the treatment program in January 2020, (2) the notes from his initial parole hearing indicating the Board planned to schedule a rehearing sometime in March 2020, and (3) his testimony that he was "stopped" from being paroled because of the pending charge. But there's no evidence that the rehearing was, in fact, scheduled; there's no evidence that a rehearing was held; and, apart from Hintze's unsubstantiated claim, there's no evidence that the Board elected not to hold the rehearing or that it denied him parole because of the pending charge. Without more, the district court was right to reject Hintze's testimony and his prejudice claim as speculative.

¶86   Second, even assuming that the Board canceled a March parole rehearing because of the pending charge, Hintze's claim that the Board would have granted him parole had the hearing been held is still too speculative to warrant weighing the prejudice factor in his favor. The court of appeals indulged in a series of hypotheticals based on its assessment of how Hintze's request for parole would have been received had this case been timely resolved. *Hintze*, 2022 UT App 117, ¶¶ 53–59. And the dissent, in turn, challenged those hypotheticals, assessing it unlikely the Board would have exercised its discretion to grant Hintze parole even if the case had been resolved. *Id.* ¶¶ 115–22 (Tenney, J., dissenting).

¶87   We ultimately share Judge Tenney's view that "there's just too much *maybe* at the heart of the majority's conclusion" to weigh the prejudice factor in Hintze's favor. *Id.* ¶ 121. Hintze made an unsubstantiated claim that he would have been paroled had the pending charge been resolved. Although we can devise scenarios under which he may have been released sooner had this charge been timely resolved, Hintze did not provide any facts upon which the district court could have relied to find that his claim was

anything but speculative. *Cf. Prince v. Alabama*, 507 F.2d 693, 707–08 (5th Cir. 1975) (finding prejudice where defendant introduced specific evidence demonstrating that a pending charge against him "was having an adverse effect upon his being considered for the most favorable rehabilitation and parole programs").

¶88 In other words, it's possible that Hintze would have been paroled sooner had this case been timely resolved, but there's nothing in the record upon which to conclude that parole was anything more than a possibility. Thus, the prejudice factor does not weigh in his favor.[14]

*E. Balancing the Factors*

¶89 The final task for courts evaluating speedy trial claims is to balance the relevant factors. There is no one-size-fits-all formula for balancing the factors. As noted, *Barker* instructs courts to take a flexible and fact-dependent approach to balancing:

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.

---

[14] Hintze also contends that aside from whether he would have been paroled in March 2020, he was prejudiced by the State's delay because that delay interfered with his "due process right to make his case for parole in March 2020." But, as we have explained, it is not clear from the record that a parole hearing was actually scheduled for March 2020, much less that the hearing was canceled because of Hintze's pending charge. *See supra* ¶ 85. Further, even assuming that the delay caused Hintze's parole hearing to be canceled, his loss of an opportunity to be heard at a parole hearing does not, on its own, constitute weighty evidence of prejudice. Although an inmate enjoys due process protections for certain parole hearings at which an inmate's release date is fixed, *see Neel v. Holden*, 886 P.2d 1097, 1101 (Utah 1994), the Board retains full discretion to grant or deny parole, and its decisions "in cases involving paroles are final and are not subject to judicial review," *Blanke v. Utah Bd. of Pardons & Parole*, 2020 UT 39, ¶ 18, 467 P.3d 850 (quoting UTAH CODE § 77-27-5(3)). Thus, absent evidence that Hintze would have been paroled if he were given an opportunity to be heard at a parole hearing in March 2020, Hintze's alleged loss of an opportunity to be heard is not significant enough to tip this factor in his favor.

> Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

407 U.S. at 533.

¶90 Strict reliance on the limited considerations described in *Barker* is inconsistent with the Supreme Court's admonition that "these factors have no talismanic qualities." *Id*. The *Barker* factors are intended to serve as suggested considerations for courts. They do not represent a mathematical formula to be calculated. *See Perez v. Sullivan*, 793 F.2d 249, 254 (10th Cir. 1986) ("We note at the outset that the factors set forth in *Barker* are guidelines, not rigid tests.").

¶91 Among other things, some *Barker* factors may be particularly probative in one case but not in another. And in some cases, it may be necessary to look at factors beyond those described in *Barker*. *See Barker*, 407 U.S. at 530 ("A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify *some* of the factors which courts should assess in determining whether a particular defendant has been deprived of his [speedy trial] right." (emphasis added)). Courts should consider all factors that are relevant to the specific case before them and give each relevant factor appropriate weight based on the circumstances.

¶92 Further, courts must balance the relevant factors together as "related factors," determining "on an ad hoc basis" whether the overall weight of the evidence supports finding a speedy trial violation. *Id.* at 530, 533. The *Barker* analysis requires engaging in a "difficult and sensitive balancing process," taking the unique circumstances of each case into account. *Id.* at 533. The factors are not simply numbers to be tallied.

¶93 With this framework in mind, we now balance the *Barker* factors in the context of Hintze's case.

¶94 We begin with the third *Barker* factor—the assertion of the speedy trial right. As noted, given the unusual circumstances in this case, this factor carries no weight—positive or negative—in our speedy trial analysis.

¶95 Next, the first and second *Barker* factors—the length of the delay and the reason for the delay—weigh in Hintze's favor. A two-year delay was too long, considering the relative simplicity of the

26

charge. But because the length was not extraordinary, the factor does not carry significant weight. Similarly, the reason for the delay weighs in Hintze's favor, but because the delay was not knowing or intentional, it weighs less heavily than it otherwise would.

¶96 Finally, the fourth *Barker* factor—prejudice—does not weigh in Hintze's favor given his failure to show that his alleged harm was based on anything more than speculation.

¶97 To recognize a speedy trial right violation, the combined weight of all relevant factors must be significant enough to justify the extraordinary remedy that accompanies such a result. And although prejudice is not required to make out a speedy trial right violation, it is a critical factor that weighs heavy in the analysis absent extraordinary delay or intentional conduct on the part of the State. Thus, on balance, we conclude that the two-year delay caused by the State's negligence, without strong evidence of prejudice to Hintze, does not weigh heavily enough in Hintze's favor to amount to a speedy trial violation warranting the extraordinary remedy of dismissal in this case.

## CONCLUSION

¶98 We conclude that the weight of the evidence in this case does not support dismissal on speedy trial grounds. Although the two-year delay caused by the State's negligence is significant, Hintze's claim that he suffered prejudice from the delay was speculative. Without more, the length and nature of the delay are not sufficiently extraordinary to constitute a speedy trial violation. Accordingly, we reverse the court of appeals' decision ordering the dismissal of the charge and remand to the court of appeals for further proceedings on Hintze's motion to suppress.

———————